UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH YOUNG,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SHOE PALACE CORPORATION,<br><br>　　　　　　　　　　Defendant. | Case No.: 21CV559-GPC(MSB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY**<br><br>**[Dkt. No. 3.]** |

Before the Court is Defendant's motion to stay this case pending conclusion of *Katt v. Shoe Palace Corporation,* Case No. 1:19cv3676-RBJ, D. Colo (filed Dec. 26, 2019), a case pending in the District Court for the District of Colorado. (Dkt. No. 3.) Plaintiff filed an opposition and Defendant replied[1]. (Dkt. Nos. 5, 6.) Based on the reasoning below, the Court GRANTS Defendant's motion to stay proceedings.

/ / /

---

[1] In its reply, Defendant argues for the first time that the Court should decline supplemental jurisdiction over the Unruh Civil Rights Act claim. (Dkt. No. 6 at 3-7.) "It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal.2000). Because Defendant did not raise the supplemental jurisdiction issue in its motion, the Court declines to consider this argument which is raised for the first time in the reply. *See Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief.").

**Background**

On March 30, 2021, Plaintiff Sarah Young ("Plaintiff") filed a putative class action complaint against Defendant Shoe Palace Corporation ("Defendant" or "Shoe Palace") for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181, and violations of California's Unruh Civil Rights Act ("UCRA"). (Dkt. No. 1, Compl.) The Court alleges that Defendant's retail stores provide the public with important goods and services and its website provides consumers access to "the ultimate experience when it comes to shoe and apparel shopping." (*Id.* ¶ 5.) Defendant's website provides information about new product arrivals as well as footwear, apparel and accessories for men, women and children, exclusive collections, sale items, store locations and personalized accounts as well as information about shipping, returns, exchanges, Defendant's story, social medica webpages, contact info and newsletter. (*Id.*)

Plaintiff is a blind and visually impaired woman and requires screen reader software to access the internet and read website content. (*Id.* ¶ 1, 25.) While she is proficient in using screen reading software, Defendant's website is not fully or equally accessible to blind and visually impaired customers, and consequently, she has been denied full and equal access to the facilities, goods and services offered to the public on Defendant's website. (*Id.* ¶¶ 3, 26-28.) Plaintiff seeks to certify a nationwide class of "all legally blind individuals who have attempted to access Defendant's website by the use of a screen reading software during the applicable limitations period up to and including final judgment in this action." (*Id.* ¶ 42.) She also seeks to certify a California class of "all legally blind individuals in the State of California who have attempted to access Defendant's website by the use of a screen reading software during the applicable limitations period up to and including final judgment in this action." (*Id.* ¶ 43.)

Fifteen months earlier, on December 26, 2019, David Katt filed a putative class action complaint against Defendant for violations of the ADA and sought declaratory relief in the District of Colorado, *Katt v. Shoe Palace Corporation*, Case No. 1:19cv3676-RBJ, D. Colo. (Dkt. No. 3-2, Hurley Decl., Ex. A, Compl.) In *Katt*, the

plaintiff is blind and visually impaired and uses screen reading software to read website content and claims that when he visited Defendant's website, he encountered multiple access barriers which denied him full and equal access to its facilities. (*Id.* ¶¶ 28, 29.) He seeks to certify a nationwide class of "all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period." (*Id.* ¶ 51.)

## Discussion

### A. *Landis* Stay

Defendant moves to stay the action pending the conclusion of the *Katt* matter pursuant to the Court's inherent authority as articulated in *Landis v. N. American Co.,* 299 U.S. 248, 254 (1936). (Dkt. No. 3.) While Plaintiff does not dispute that the same website, same ADA violations and same nationwide class under the ADA are alleged in both cases, she argues a stay will hinder her and the class members' ability to recover monetary relief under California's UCRA. (Dkt. No. 5.)

A federal district court possesses the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis,* 299 U.S. at 254.

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962)). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it,

pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952); *Landis,* 299 U.S. at 254-55 (additional citations omitted)).

"In the typical *Landis* stay case, a federal court postpones resolution of the case pending some related proceeding. However, the related proceeding typically serves only to narrow the factual or legal issues for the federal court . . . . [A] *Landis* stay is generally of a limited duration." *Stoltz v. Fry Foods, Inc.*, 60 F. Supp. 3d 1132, 1136-37 (D. Idaho 2014) *see also Landis*, 299 U.S. at 250-51 (recognizing that the related case "may not settle every question of fact and law" in the stayed federal action). A district court has discretion whether to grant or deny a *Landis* stay. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

### 1. Possible Damage in Granting a Stay

Defendant argues there is no prejudice to Plaintiff if a stay is granted. (Dkt. No. 3-1 at 9.) Instead, Plaintiff will benefit from the *Katt* matter because she is a member of the *Katt* class, and if the class is certified, it will provide relief to her on the ADA claim. Moreover, a mere delay of Plaintiff's case is far outweighed by having the issues streamlined by the Colorado district court when it makes its rulings about whether the ADA applies to Defendant's website and whether it is accessible.

Plaintiff disagrees arguing that she and the class will be prejudiced because a stay will jeopardize their UCRA claim which affords them monetary relief. She explains that in the event the ADA claim in this case becomes moot, the Court may decline to exercise supplemental jurisdiction of the remaining UCRA claim, and if so, Plaintiff will be required to file her remaining UCRA claim in state court which will require her prove intentional conduct an element not required if a violation of the ADA is shown. She urges that a stay would contravene the California legislative's purpose to strengthen

remedies for California plaintiffs by amending section 51 of the Civil Code to add that "[a] violation of the right of any individual under the [ADA] shall also constitute a violation of this section." (*Id.*)

To prevail on a claim under the ADA, a plaintiff must show that (1) he or she has a disability within the meaning of the ADA; (2) the defendant is a private entity that operates, leases, or owns a place of public accommodation; and (3) he or she was denied "public accommodations by the defendant because of his or her disability." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)). "[A] plaintiff need not show intentional discrimination in order to make out a violation of the ADA." *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004). Under the ADA, "damages are not recoverable . . . only injunctive relief is available." *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)).

The UCRA provides in part that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The UCRA also provides that a violation of the ADA constitutes a violation of § 51 of the UCRA. Cal. Civ. Code § 51(f). While a claim under the UCRA requires a plaintiff to allege an intentional act by a defendant, a showing of intentional discrimination is not required when a plaintiff brings a UCRA claim based on a violation of the ADA. *See Munson v. Del Taco, Inc*., 46 Cal. 4th 661, 678 (2009) (a plaintiff seeking damages for ADA violations under the Unruh Civil Rights Act is not required to prove intentional discrimination); *see also Lentini*, 370 F.3d at 847 ("[N]o showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA

violation."). In contrast to the ADA, the UCRA also allows for recovery of monetary damages. *See* Cal. Civ. Code § 52(a)[2].

Plaintiff's claim of prejudice due to the inability or difficulty in seeking monetary damages under the UCRA claim is not convincing. First of all, claims of monetary injury due to past harm do not rise to the level of harm or prejudice needed to justify a denial of a stay. *See CMAX*, 300 F.2d at 268-69 (delay in monetary recovery does not constitute irreparable harm or a miscarriage of justice). Instead, a party seeking injunctive relief against ongoing and future harm demonstrates harm sufficient to deny a stay. *Lockyer*, 398 F.3d at 1112 (*Landis* stay not justified under facts of the case where the Attorney General sought injunctive relief and a stay would harm the Attorney General as well as the interest of the electricity consumers of northern California that the Attorney General sought to protect).

Here, Plaintiff argues she will be prejudiced because her UCRA claim seeking monetary relief may be jeopardized because she may need to prove intentional discrimination if she files her case in state court. While a delay in obtaining monetary relief does not justify a denial of a stay, her claim that she may not be able to obtain monetary relief is without merit. In the event the ADA claim becomes moot in this Court and it declines supplemental jurisdiction over the UCRA claim, Plaintiff may file a complaint in state court under the UCRA "on two alternate theories: (1) a violation of the ADA [ ] or (2) denial of access to a business establishment based on intentional discrimination." *Martinez v. San Diego Cnty. Credit Union*, 50 Cal. App. 5th 1048, 1059 (2020). Moreover, any ruling on the ADA claim by the District of Colorado against Defendant may be used to support her UCRA claim in state court potentially under a theory of claim or issue preclusion. Therefore, the Court disagrees that her UCRA claim

---

[2] A plaintiff may recover actual damages for each and every offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)[.]" Cal. Civ. Code § 52(a).

is in jeopardy if a stay is granted. Thus, the Court concludes that Plaintiff will not be subject to irreparable harm by a stay.

### 2. Hardship or Inequity a Party Must Suffer in Not Granting a Stay

Defendant argues that it will suffer hardship and inequity unless a stay is imposed because it will be forced to litigate the exact same factual and legal issues in two separate courts causing undue financial harm in defending two identical cases as well as duplicative discovery and motion practice, and it may be subject to inconsistent adjudications by two different courts. (Dkt. No. 3-1 at 8.) Further, because the same ADA issues will be decided in the *Katt* case, a stay will inform, simplify and narrow the issues in this case for the parties' benefit. (*Id.*) Plaintiff disagrees maintaining that Defendant will not be significantly prejudiced but contends it will be to Defendant's benefit as the plaintiffs in both cases will be motivated to settle first because each plaintiff knows his or her case will be impacted depending on a pending settlement in either case.

Plaintiff's argument is not persuasive as to the benefits that may inure to Defendant if stay is not granted. The Court agrees with Defendant that defending two separate cases involving the same legal and factual issues would be unduly burdensome and a hardship on Defendant. Moreover, it could be subject to two different rulings by separate courts. On the other hand, if a stay were imposed on this case, any settlement or ruling by the *Katt* court would simplify the ADA issues in this case. Therefore, Defendant would endure hardship if it were required to defend its website in two different courts.

### 3. Whether a Stay Will Simplify or Complicate Issues

Defendant argues that a stay will simplify issues because both cases concern the obligations of the same website and potentially the same parties. Moreover, because the law in this area is not settled and rapidly changing, there is a substantial risk of inconsistent rulings concerning the same website. In contrast, Plaintiff argues, without citing legal authority, that comity weighs against a stay arguing that because Ninth Circuit law is clear on whether the ADA applies to websites and the Tenth Circuit has yet

7

to make a ruling on this claim, Plaintiff should not be required to wait until the Tenth Circuit rules on this issue.

On the third factor, the court considers whether a stay will simplify or complicate issues, proof, and questions of law. *See CMAX*, 300 F.2d at 268. Here, the *Katt* case and this case concern an identical class action complaint seeking to certify a nationwide class under the ADA against the same Defendant. Therefore, having two district courts consider the same legal issue will result in needless and wasteful duplication of efforts. *See Chronicle Pub. Co. v. Nat'l Broad. Co.*, 294 F.2d 744, 748 (9th Cir. 1961). A stay would promote judicial economy by allowing the *Katt* case to proceed with discovery and dispositive motions or the parties may engage in a settlement which will simplify certain issues in this case. Allowing the case to proceed would lead to judicial inefficiency and complicate issues with the potential of divergent rulings on how to make Defendant's website ADA compliant.

As the parties note, whether websites are covered by Title III of the ADA is a developing area of the law that is in dispute. *See e.g., Martinez*, 50 Cal. App. 5th at 1062-63 (noting and citing cases for the "majority" and "minority" view on whether a website is a public accommodation). For example, in *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 122 (2019), the Ninth Circuit held that the ADA applied to Domino's Pizza's website and mobile application because the ADA applies to "the services *of* a place of public accommodation, not services *in* a place of public accommodation." *Id.* at 905. The Ninth Circuit applied the nexus theory holding that the ADA applies when there is a "nexus between [defendant's] website and app and physical restaurants" but declined to address "whether the ADA covers the websites or apps of a physical place of public accommodation where their inaccessibility does not impede access to the goods and services of a physical location." *Id.* at 905 & n. 6. In contrast, in *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir. 2021), the Eleventh Circuit held that a "public accommodation" under Title III of the ADA is limited to actual, physical places and do not include websites and distinguished *Robles*

given that the Winn-Dixie grocery store chain did not sell its goods on its website. *Id.* at 1283-84. Per the strict reading of the statute, the Eleventh Circuit held a website is not a place of public accommodation under Title III. *Id.* at 1275-76.

Notwithstanding the developing split among the courts, a stay would still promote judicial economy and efficiency. Under the first-to-file rule discussed below, the Colorado district court should first proceed to tackle the question of whether the ADA applies to Defendant's website.[3] Moreover, even if the Colorado district court concludes that the ADA applies to Defendant's website, there is the additional consideration of the accessibility standards[4] that would apply to websites and whether Defendant's website meets those standards and whether the website contains access barrier and other related issues. Therefore, because the ADA issue will be addressed in the District of Colorado, it will narrow factual and legal issues before this Court. Therefore, in the interest of efficiency and judicial economy, a stay is warranted.

Based on the weighing of the factors to justify a stay, the Court concludes that the hardships on Defendant in proceeding with this case, and judicial efficiency and the avoidance of inconsistent rulings outweigh any prejudice to Plaintiff and putative class members. Thus, the Court GRANTS Defendant's motion to stay until resolution of the *Katt* case.

/ / /

/ / /

/ / /

---

[3] The Court notes that there is a pending motion for summary judgment brought by Defendant on June 10, 2021 in the *Katt* action. (*Katt v. Shoe Palace Corporation*, Case No. 1:19cv3676-RBJ, Dkt. No. 21, D. Colo.)

[4] In 2010, the DOJ, charged with issuing regulations concerning the implementation of the ADA, issued an Advance Notice of Proposed Rulemaking ("ANPRM") to "explor[e] what regulatory guidance [DOJ] can propose to make clear to entities covered by the ADA their obligations to make their Web sites accessible"; however, the ANPRM was withdrawn on December 26, 2017. *Robles,* 913 F.3d at 910 (citing 82 Fed. Reg. 60932-01). Therefore, no regulatory guidance exists on ADA accessibility standards for websites.

**B.     First-to-File Rule**

Alternatively, the case should be stayed under the first-to-file rule. While Defendant sought to stay the case under *Landis*, Plaintiff responds to Defendant's motion solely by addressing the first-to-file rule.

"[T]he doctrine of federal comity, [is] a discretionary doctrine which permits one district to decline judgment on an issue which is properly before another district." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 749 (9th Cir. 1979) (*overruled on other grounds by Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016)). The purpose of the comity principle is . . . designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Id.* at 750. The first-to-file rule is a "recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) (citing *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 749 (9th Cir. 1979)). It was developed to "serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology*, 611 F.2d at 750). The first-to-file rule "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." *Id.* at 623. In determining the applicability of the first-to-file rule, courts look to three factors: (1) the chronology of the lawsuits, (2) the similarity of the parties, and (3) the similarity of the issues. *See id.* at 625. Exceptions to the first-to-file rule include where the filing of the first suit evidences bad faith, anticipatory suits, and forum shopping. *Alltrade,* 946 F.2d at 628. Moreover, a court may, in its discretion, decline to apply the first-to-file rule in the interests of equity as well as a demonstration of prejudice. *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010); *Ward v. Follett Corp.,* 158 F.R.D. 645, 648 (N.D. Cal. 1994). When applying the first-to-file rule, courts should be

driven to maximize "economy, consistency, and comity." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999).

### 1. Chronology

Plaintiff argues that because the *Katt* action was filed three months before this case, which is a short period of time, this factor is neutral. However, the *Katt* action was filed fifteen months before this case. Therefore, the *Katt* case came first in chronology and satisfies this factor.

### 2. Similarities of the Parties

Plaintiff acknowledges that the parties are similar and this factor supports a stay. (Dkt. No. 5 at 6.) The "first-to-file rule does not require the exact identity of the parties" but requires "only substantial similarity of parties." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (omission of one defendant does not defeat application of the first-to-file rule). Moreover, in a class action, the classes, not the class representatives are compares. *Weinstein v. Metlife, Inc., No.* C06-04444 SI, 2006 WL 3201045, at *4 (N.D. Cal. Nov. 6, 2006). Here, the classes are the same in both cases and this supports a stay.

### 3. Similarities of the Issues

Plaintiff argues that there is a significant difference between the two cases because in this case Plaintiff seeks to represent a nationwide class and a California class and the California claim seeks statutory damages. (Dkt. No. 5 at 6.)

Under the first-to-file rule, "the issues in both cases also need not be identical, only substantially similar" and courts must look at "whether there is 'substantial overlap' between the two suits." *See Kohn Law Grp., Inc.*, 787 F.3d at 1240-41. Here, the key theory in both cases is a violation of the ADA. Moreover, the California UCRA provision Plaintiff relies on is premised on a violation of the ADA. Therefore, there is substantial overlap between the two suits.

Plaintiff does not allege any exceptions to the first-to-file rule such as bad faith, anticipatory suits, and forum shopping should apply. Because all three first-to-file factors support a stay, the Court alternatively GRANTS Defendant's motion to stay.

## Conclusion

Based on the reasoning above, the Court GRANTS Defendant's motion to stay until conclusion of the case in *Katt v. Shoe Palace Corporation,* Case No. 1:19cv3676-RBJ, D. Colo (filed Dec. 26, 2019). The hearing set on July 9, 2021 shall be **vacated.**

IT IS SO ORDERED.

Dated: July 2, 2021

Hon. Gonzalo P. Curiel
United States District Judge